UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE :

DEBORAH FUQUA,

    Debtor.
_____/

Chapter 13
Case No. 12-52348
Hon. Walter Shapero

## OPINION INCIDENT TO OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

### BACKGROUND

Deborah Fuqua (the "Debtor") filed for Chapter 7 Bankruptcy protection on May 17, 2012. Debtor obtained a discharge on August 28, 2012 but subsequently moved the Court to set aside the discharge which was granted on December 21, 2012. Debtor then converted the Chapter 7 case to a Chapter 11 case on January 17, 2013. On May 6, 2013 Debtor converted the Chapter 11 case back to a Chapter 7 case, pursuant to which Debtor obtained a discharge and the Chapter 7 case was closed. The Trustee thereafter moved to reopen the case after becoming aware of additional assets of the Debtor's bankruptcy estate. The Chapter 7 case was reopened and then Debtor converted the Chapter 7 case to a Chapter 13 on March 25, 2014. After Debtor filed her proposed Chapter 13 plan, Wilmington Trust Company and U.S. Bank National Association (the "Creditors") filed objections to its confirmation based on disagreement as to the value of certain real property owned by the Debtor.

Debtor owns a number of residential properties. One is located in Redford Michigan (the "Redford house"). Another is located in Belleville Michigan (the "Belleville house"). Wilmington Trust Company holds a mortgage in the amount of $83,048.02 which is secured by the Redford house. U.S. Bank National Association holds a mortgage in the amount of

1

$102,267.64 which is secured by the Belleville house. Both Creditors are represented by the same counsel.

The proposed Chapter 13 plan provides that the Debtor will "cramdown" the payments for these two homes. Debtor's plan proposes to pay $24,854 plus 5% interest to Wilmington Trust Company on the Redford house. This amount was apparently determined based on a valuation of that property as of the May 17, 2012 Bankruptcy petition filing date. Debtor's plan also proposes to pay $18,950 plus 5% interest to U.S. Bank National Association on the Belleville house. This amount was similarly determined based on the Debtor's valuation of the property as of the same May 17, 2012 date.

Creditors object to using the date of the petition filing as the valuation date for purposes of the "cramdown", suggesting the properties should be valued as of a date at or near plan confirmation. Thus, the issue is the appropriate date for determining the value of real property in a Chapter 13 case, in this, a case which was converted from Chapter 7 to Chapter 13 almost two years after the initial petition date.[1] It is now 2015 and a likely confirmation date, if it is to occur, will likely be sometime around July 2015, barring further proceedings.

GOVERNING LAW

11 U.S.C. § 506(a)(1) states as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.* (Emphasis added)

---

[1] In this case, Debtor has alternatively argued that the conversion date rather than the filing date should be the valuation date.

The statute does not specifically indicate a precise date in time to be used to determine the value of property in all cases. Rather, it essentially states the date should be one that is appropriate based on the purposes of the valuation. Courts have variously opined on the issue. One Court has said, "The legislative history of § 506(a) makes it clear that no fixed approach to valuation is intended". *See In re Fiberglass Indus., Inc.*, 74 B.R. 738, 741 (Bankr. N.D.N.Y. 1987).

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting a creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361-363 would not be binding upon the debtor or creditor at the time of confirmation of the plan.

*Sen. R. No. 989, 95th Cong., 2nd Sess. 68 (1978), reprinted in U.S. Code Cong. & Admin. News 5787, 5854.*

Another Court has said:

> The second sentence of § 506(a) states that a valuation must be "determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." That sentence indicates that property may be valued at different times for different purposes. Were that not the case, that provision would serve no purpose.

*In re Stanley*, 185 B.R. 417, 423 (Bankr. D. Conn. 1995)

Debtor argues that the petition date is the appropriate date and several Courts have agreed with that view; i.e.: *TD Bank, N.A. v. Landry*, 479 B.R. 1, 9 (D. Mass. 2012) (holding valuation must take place as of the date the petition was filed). *See also In re Dinsmore*, 141 B.R. 499, 505 (Bankr. W.D. Mich. 1992) (the crucial date for determining the extent of a lender's collateral is when the petition is filed); *In re Dean*, 319 B.R. 474, 479 (Bankr. E.D. Va. 2004) (holding the petition date is the appropriate date to value Debtors' principal residence because Debtor have used the property as their principal residence throughout the Bankruptcy case from the date of

3

their petition to the present); *In re Aubain*, 296 B.R. 624, 636 (Bankr. E.D.N.Y. 2003) (looking to the date of filing is proper to discourage Creditors from disclaiming security interests postpetition or attempting other tactics to defeat the Debtor's ability to modify claims); *In re Beard*, 108 B.R. 322, 327 (Bankr. N.D. Ala. 1989) (concluding using collateral values as of the date of the Bankruptcy is appropriate).

Other Courts have held that the plan confirmation date is more appropriate. There is also case law supporting that approach. *In re King*, No. 01-37214DWS, 2003 WL 22110779, at 2 (Bankr. E.D. Pa. Sept. 2, 2003) (stating the majority of cases addressing valuation of collateral in the cram down context adopt the position that collateral should be valued as of or near the confirmation date); *In re Fareed*, 262 B.R. 761, 769 (Bankr. N.D. Ill. 2001) (holding that it is practicable and reasonable to require that collateral value, under § 506(a) be established at the time of confirmation); *In re Winston*, 236 B.R. 167, 171 (Bankr. E.D. Pa. 1999) (holding the critical time at which a car must be evaluated is the date of confirmation of the plan); *In re Jablonski*, 88 B.R. 652, 655 (E.D. Pa. 1988) (concluding that final valuation under § 506(a) should be made in the context of confirmation of a plan.); *In re Hales*, 493 B.R. 861, 864 (Bankr. D. Utah 2013) (discussing four different valuation dates: the date of confirmation; the date of the petition; the date of the valuation hearing; and the effective date of the plan and holding that the confirmation date, or a date near it, is the appropriate date for determining value of collateral for the purposes of confirmation).

Then there are Courts which have developed a flexible "totality of the circumstances" approach, allowing for a determination on a case by case basis. This approach was discussed in detail in *In re Wood*, 190 B.R. 788 (Bankr. M.D. Pa. 1996), where the Court stated:

> Our review of these numerous decisions has convinced us that the choice as to which date of valuation we should utilize in adjudicating an issue such as the one

before us should not be restricted to any one date but should turn on the following factors:

1. The impact of the debtor's efforts on the postpetition change in value.
2. The expectancies of the parties at the time they may have made the loan agreement (if any).
3. The desirability of uniformity. Will the application of different dates for valuation purposes reach an absurd result?
4. The convenience of administration.
5. The equitable concept that those who bear the risk should benefit from the rise in value.
6. A resulting windfall to any one party should be discouraged.19
7. The bankruptcy policy set forth in section 552(b) which extends prepetition liens to postpetition proceeds in certain situations.
8. The bankruptcy policy set forth in 11 U.S.C. § 362(d), which encourages the tendering of adequate protection payments to a creditor holding depreciating collateral.
9. The off-stated policy of bankruptcy to secure the debtor a "fresh start". Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).
10. The result of utilizing a specific date of valuation on the bankruptcy itself including that impact upon senior and junior lien creditors.
11. Whether the party benefitting from a delay in valuation has been responsible for that delay.

*Id*. at 794-95. *See also In re Aubain*, 296 B.R. 624, 636 (Bankr. E.D.N.Y. 2003) (holding since the valuation date depends first, on the purposes of the valuation, and second, on the equities involved, the flexible approach used by the court in *In re Wood* is preferable).

## ANALYSIS

Coming to the appropriate conclusion requires taking a number of considerations into account. The typical Chapter 13 case, when initially filed as one, normally involves a period of 3 to 6 months from filing to confirmation. That period might lengthen somewhat if there is a valuation issue of the kind involved in this case, or there is a lien strip with a valuation issue or some other fairly expeditiously concluded proceeding affecting confirmation. In that context one would not normally expect there not to have been a material difference in values between the filing date and a valuation date at or near confirmation.

5

It would seem logical that a valuation would be more credible and accurate and more readily determinable if the valuation date is a relatively contemporary one, rather than having to determine value on a materially remote earlier or later date. A more contemporary date would tend to minimize the possibility of manipulation or gamesmanship by one party or another, and avoid inappropriate windfalls to one party or another in situations where values are, or are perceived to be volatile and likely to materially rise or fall during the period in question. Then you have, as in this case, an unusual and long procedural history involving the case having been filed as a Chapter 7, converted to a Chapter 11 and then back to a Chapter 7, reopened and then becoming a Chapter 13, with it now being a Chapter 13 some three years later. There are also practical considerations that bear on the issue. At the commencement of a Chapter 13 case, debtors fill out schedules calling for the then values of assets and must file a plan proposing treatment and disposition of assets, the values of which are or may become important or necessary to plan confirmation. Presumably considered and supportable judgments as to values are then made, and to some extent, potential valuation issues are anticipated. That presents a sort of baseline situation, from which the case then moves forward. Then a certain amount of time is required to (a) determine whether or not there in fact is going to be a valuation issue; (b) if so then obtaining the necessary valuation expert; (c) getting the expert's reports; (d) having a trial date set and the matter heard; (e) and then having a valuation issue decided. Each or some of the foregoing considerations considered alone might separately dictate or at least have an impact on one result or another.

The likely gamut of cram down valuations could involve a debtor's residence, a vehicle, or as is true in this case, investment realty, the continuing income from which is taken into account in determining payments. The beginning premise at least is that each and all of such will

continue to be held and used by the Debtor over the life of the plan. The statute talks about the purpose of the valuation and of the proposed disposition or use of the property. The purpose of the valuation in this case is to determine how or if the Debtor can retain the property during a Chapter 13 plan, and utilize it (to live in, use, or produce income) during the period of the plan.

Taking into account all of the foregoing, the Court concludes the valuation date ought to presumptively be the date the case is filed, but that presumption should be one that is rebuttable by relevant circumstances, primarily the following: (a) the amount of time that has passed between the case filing date and a date at or near the confirmation date; (b) the volatility of the market and whether or not there has been a substantial rise or change in value between those dates; (c) whether the party materially benefitting from any undue delay is responsible for the delay or is perceived as trying to manipulate the process for that party's benefit; and (d) the likelihood the property will or will not be disposed of or become relatively useless during the life of the plan. In a sense this is an adoption of the flexible approach but the way it should generally be procedurally handled is that the basic appropriate valuation date is the case filing date, but the party who utilizes or proposes a different valuation date (and thus presumably a different value) will have the burden of utilizing the different articulated factors to contend and convince the Court that the proper valuation date is more properly a date at or near confirmation-those being the only two dates to properly consider.

Applying those principles in this case, the Court concludes the substantial period of time between the filing date and the likely confirmation date coupled with the fact that such was due to the actions and the choices of the Debtor in deciding what the nature of her bankruptcy case was to be (though not necessarily consciously manipulative in the negative sense of that term), and the likelihood that over that period of time the value of the property has risen materially,

require that in this particular case, the proper valuation date is a date at or near confirmation, not the original petition filing date valuation proposed by Debtor in her presently proposed plan.

## CONCLUSION

That said, confirmation of Debtor's existing plan is denied and the parties should take further steps toward confirmation consistent with this opinion.

.

**Signed on June 10, 2015**

                                             **/s/ Walter Shapero**
                                    **Walter Shapero**
                                    **United States Bankruptcy Judge**